**M. Rosario HERNANDEZ, Administratrix of the estate of Elena H. Gonzalez, Deceased, Plaintiff,**

v.

**Clark WHITESELL et al., Defendants.**

**Civ. A. No. 77–668.**

United States District Court, E. D. Pennsylvania.

Oct. 6, 1978.

---

Richard W. Hollstein, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff.

Edwin F. McCoy, Philadelphia, Pa., for West Goshen Township.

John T. Kalita, Jr., Dept. of Transp., Harrisburg, Pa., for Com. of Pa., Dept. of Transp.

John L. Sweezy, Dept. of General Services, Harrisburg, Pa., for Whitesell, Wade, Brango, Guillo, Johnson, Mueller, Simms and Mattia, individual defendants.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Plaintiff's decedent was killed when her car skidded on an icy roadway. Plaintiff initially filed suit against the Pennsylvania Department of Transportation ("Penn-DOT") and various of its employees. PennDOT was dismissed as a defendant in 1977, on grounds of sovereign immunity. At that time, the Supreme Court of Pennsylvania had pending before it several cases in which abrogation of the defense of sovereign immunity was being sought; accordingly, the Order of dismissal in this case was expressly made without prejudice to plaintiff's right to refile her action against PennDOT in the event an intervening change in the law of Pennsylvania justified such action.

On July 14, 1978, the Supreme Court of Pennsylvania decided the case of *Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978) abolishing the defense of sovereign immunity. Plaintiff thereafter brought a separate action against PennDOT, Civil Action No. 78–2424, but that action has been withdrawn by mutual consent (presumably because of the pendency of actions instituted by plaintiff in the Commonwealth Court and in the Court of Common Pleas of Chester County).

Meanwhile, plaintiff filed an Amended Complaint in this action naming as defendants various individual employees of Penn-DOT, and also West Goshen Township and

certain employees of that Township. West Goshen Township filed a third-party complaint against PennDOT, and also against the remaining individual defendants.[1] The various defendants have filed motions to dismiss plaintiff's Amended Complaint, and the third-party defendants have filed motions to dismiss West Goshen Township's third-party complaint. In addition, plaintiff is pressing various discovery motions.

## I.

### Defendants' Motions to Dismiss Plaintiff's Amended Complaint

To the extent that the motions to dismiss the Amended Complaint are based upon the assertion of sovereign immunity, they now lack merit, in view of *Mayle v. PennDOT, supra.* I agree with the defendants, however, that the abolition of the doctrine of sovereign immunity does not impair the continued vitality in Pennsylvania of the doctrine of official immunity.

Under Pennsylvania law, a "high public official" acting within the scope of his authority, is absolutely immune from civil liability; a "low public official" is conditionally immune. *U. S. ex rel. Fear v. Rundle,* 506 F.2d 331 (3d Cir. 1974); *Fischer v. Kassab,* 25 Pa.Cmwlth. 593, 360 A.2d 809 (1976); *Freach v. Commonwealth,* 471 Pa. 558, 370 A.2d 1163 (1977). It does not appear that any of the individual defendants occupied a policy-making position at a level which would qualify the incumbent as a "high public official." At best, therefore, they must be regarded as perhaps entitled to a qualified immunity: If the actions or omissions giving rise to liability were matters committed to their discretion, they would be immune so long as that conduct was not malicious, wanton or reckless. If they were not vested with discretion in the premises, then it would seem they would be liable for mere negligence. *U. S. ex rel. Fear v. Rundle, supra,* at p. 335. It seems virtually self-evident that the issues of qualified privilege cannot properly be determined on the pending motions to dismiss; a fuller development of the factual background is required. The motions to dismiss plaintiff's Amended Complaint will therefore be denied.

## II.

### Individual Third-Party Defendants' Motions to Dismiss the Third-Party Complaint of West Goshen Township

Just as plaintiff's Complaint cannot be dismissed, on this record, on grounds of sovereign immunity or official immunity, the cross-claims of West Goshen Township against the individual defendants are not vulnerable on those grounds, to the extent that the Township seeks indemnity or contribution. Of course, under federal third-party practice, it is impermissible for West Goshen Township to seek to impose "sole liability" upon the third-party defendants for plaintiff's damages. Language in the cross-claims asserting sole liability will therefore be disregarded as surplusage.

## III.

### Plaintiff's Discovery Motions

Plaintiff is clearly entitled to the discovery sought. The defendants will be required to comply with all outstanding discovery requests within thirty days from this date. Plaintiff's Motion for Sanctions is denied.

## IV.

### Motion of Pennsylvania Department of Transportation to Dismiss the Third-Party Complaint of West Goshen Township

By reason of the *Mayle* decision, *supra,* it is now clear that, under the law of Pennsylvania, PennDOT, as an instrumentality of the sovereign, is no longer immune from civil liability to private citizens for torts committed by its agents, servants and employees, in the course and scope of their employment. The issue presented by PennDOT's motion and the third-party plaintiff's

---

1. As to the individual defendants, this will be treated as a cross-claim.

response thereto is whether Pennsylvania's abolition of the defense of sovereign immunity also eliminates the bar of the Eleventh Amendment to the United States Constitution. A further issue, which has not been identified by the parties, but which I believe is also presented in this case, is the proper exercise of a district court's discretion, limited though it may be, to decline to assert ancillary jurisdiction over third-party claims where diversity is lacking.[2]

### A. The Eleventh Amendment

■ The Eleventh Amendment provides simply that

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State."

Read literally, it would seem (a) that the Eleventh Amendment does not apply to actions between a state and citizens of that state, and (b) that no court of the United States would have the power to act in any litigation falling within the proscription of the amendment. However, it is now clear that neither conclusion is correct. The Eleventh Amendment applies with equal force to actions by a citizen of a state against that state, e.g., Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). And, although couched in terms of limitation of federal judicial power, the Eleventh Amendment has generally been construed either as expressing concepts of sovereign immunity, or as stemming from notions of sovereign immunity, with the result that, contrary to the general rule with respect to jurisdictional limitations, the "consent" of a state to suit in a federal forum suffices to remove the impediment posed by the Elev-

enth Amendment.[3] Parden v. Terminal Railway Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Petty v. Tennessee-Missouri Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

■ But it is well established that waiver of sovereign immunity alone is not enough to justify the exercise of federal jurisdiction over a claim against a state; it must clearly appear that the state has consented to suit in a federal forum. That is, unless the Supremacy Clause requires a different result, a state may limit its waiver of sovereign immunity to suits in state courts. Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900); Chandler v. Dix, 194 U.S. 590, 24 S.Ct. 766, 48 L.Ed. 1129 (1904); Murray v. Wilson Distilling Co., 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742 (1909); Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). This principle has been emphatically reiterated as recently as Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The issue, therefore, is whether the Pennsylvania Supreme Court's decision in the Mayle case, supra, can properly be interpreted as Pennsylvania's consent to suit in a federal court. In a recent decision, the United States District Court for the Western District of Pennsylvania has accepted that interpretation. Greenfield v. Vesella, 457 F.Supp. 316 (W.D.Pa., 1978). With deference, I am compelled to disagree.

Article I, § 11 of the Constitution of Pennsylvania provides that

"Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the legislature may by law direct."

---

**2.** Neither plaintiff's decedent, nor plaintiff herself, was or is a citizen of Pennsylvania. It appears that plaintiff resides in Texas, but is a citizen of Columbia. But we are concerned here, not with plaintiff's claims, but with the claims of West Goshen Township. Apart from the problem of whether PennDOT is a "citizen" of Pennsylvania for diversity purposes, it is clear there is no diversity between third-party plaintiff and the third-party defendant.

**3.** A particularly thorough and enlightening analysis of the relationship between the Eleventh Amendment, sovereign immunity, and concepts of federalism is provided in Fields: The Eleventh Amendment and Other Sovereign Immunity Doctrines: Part One, 126 U. of P.Law Review 515 (1978).

The majority in *Mayle* held that this provision does not mean that sovereign immunity is embedded in the Pennsylvania Constitution. Rather, the quoted language was construed as evincing constitutional neutrality with respect to sovereign immunity. The Court viewed sovereign immunity as a common law doctrine, established by judicial decision, and therefore subject to modification by judicial decision. Indeed, it seems clear that nothing in the *Mayle* decision would prevent the Legislature from providing for sovereign immunity by statute. By the same token, the Court plainly did not purport to abrogate any State statutory enactment touching the suability of the State.

■ Pennsylvania has, by statute, provided for exclusive jurisdiction in the Commonwealth Court of "all civil actions or proceedings against the Commonwealth or any officer thereof, acting in his official capacity . . . ." 17 P.S. § 211.401. This statutory provision, which nothing in the *Mayle* decision purports to undermine in any way (the *Mayle* case, and all of its companion cases raising the same issues, were on appeal from the Commonwealth Court) surely precludes a finding that the Commonwealth of Pennsylvania has consented to suit in a federal forum.

I readily agree with the *Greenfield* Court in its conclusion that *Mayle* totally abolishes the defense of sovereign immunity in tort cases in Pennsylvania. But I believe that the Pennsylvania Supreme Court left intact whatever aspects of sovereign immunity have been enacted into law by the Pennsylvania Legislature. Indeed, I seriously question whether the judicial branch of Pennsylvania's Government has the power to consent, on behalf of the Commonwealth of Pennsylvania, to suit in a federal forum. At the very least, I am satisfied that judicial expression of such consent is not to be implied in the face of a statute to the contrary, and that the Supreme Court of Pennsylvania did not purport to be expressing such consent in the *Mayle* decision.

It is, of course, quite possible that, in the wake of the *Mayle* case, the Pennsylvania Legislature may see fit to reexamine the Judicial Code's provisions concerning the exclusive jurisdiction of the Commonwealth Court. But that is not a matter which a federal court is authorized to anticipate.

■ A further point should be mentioned. Elimination of sovereign immunity as a defense to an action brought by a person injured as a result of the negligence of state officials does not necessarily mean that political subdivisions are free to obtain contribution or indemnity from the State with respect to actions brought against political subdivisions by injured parties. It is at least arguable that the *Mayle* decision was not intended to affect the relationship between the State and its political subdivisions in this context. Since that issue has not been pressed in this case, I express no view upon it.

B. *Ancillary Jurisdiction*

■ This Court's jurisdiction over this litigation is based upon the federal diversity statute, 28 U.S.C. § 1332. West Goshen Township's third-party complaint against PennDOT is between non-diverse parties. This Court's power to entertain the third-party complaint stems from the fact that Article III, § 2 of the United States Constitution is a grant of federal jurisdiction over "cases" between, *inter alia,* citizens of different states and that, under prevailing concepts of ancillary jurisdiction, the "entire" case is before this Court. But a federal court is not necessarily required to exercise its ancillary jurisdiction. *See,* generally, Wright, *The Law of Federal Courts,* Ch. 2, § 9. Because efficient judicial administration is generally served by avoiding circuity of actions, federal courts seldom have occasion to decline to exercise ancillary jurisdiction in diversity vehicular-accident cases. But I am inclined to believe that the present case is an exception. The dispute between West Goshen Township and PennDOT is already being litigated in the state courts. Litigation between a municipal subdivision and its creator, the Commonwealth, is better left to the state courts in the first instance. Granted that it may

eventually develop that the Eleventh Amendment is not a bar to this Court's exercise of jurisdiction over the third-party complaint, either because this Court is in error, or because the Legislature may clarify the consent issue, the present situation is at best confused. I believe it would be preferable to allow time for the Pennsylvania Legislature and the Pennsylvania courts to clarify the situation, rather than to insist upon exercising discretionary jurisdiction over the controversy.

## ORDER

AND NOW, this 6th day of October, 1978, it is ORDERED:

1. The defendants' several motions to dismiss plaintiff's Amended Complaint are DENIED.

2. The several motions of the individual defendants to dismiss the crossclaims (third-party complaint) of the defendant West Goshen Township are DENIED.

3. The motion of the Pennsylvania Department of Transportation to dismiss the third-party complaint of West Goshen Township is GRANTED.

4. The defendants are directed to comply with all outstanding discovery requests within thirty (30) days.