Thomas C. WITTER

v.

**PENNSYLVANIA NATIONAL GUARD, Major General Harry Mier, Commonwealth of Pennsylvania.**

Civ. A. No. 75–1947.

United States District Court, E. D. Pennsylvania.

Dec. 14, 1978.

Carl T. Bogus, Steinberg, Greenstein, Gorelick & Price, Philadelphia, Pa., for plaintiff.

Stanley I. Slipakoff, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, a former employee and member of the Pennsylvania National Guard, has sued the Pennsylvania National Guard, the Adjutant General of the Pennsylvania National Guard, Major General Harry Mier,[1] and the Commonwealth of Pennsylvania, seeking backpay, benefits, and attorney's fees, claiming that the defendants should have given him a military leave of absence at the time he volunteered for active duty in Vietnam, and reinstated him to his former position or a comparable one upon his return. Plaintiff brings this action pursuant to the Military Selective Service Act of 1967, 50 U.S.C. App. §§ 451 et seq., the Vietnam Era Veterans Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021 et seq., and the Civil Rights Act of 1871, 42 U.S.C. § 1983,[2] and raises a pendent claim under the Pennsylvania Military Leave of Absence Act, 51 P.S. §§ 7301 et seq. The parties entered into a stipulation as to all of the essential facts except the substance of the conversations between the plaintiff and his commanding officer at the time he volunteered for active duty. A brief trial on the issue of liability was held before the court, sitting without a jury. For the reasons hereinafter stated, the court finds for the plaintiff and against the defendants on the issue of liability.

From July 1965 until July 1967, the plaintiff was employed in a full-time civilian capacity by the Pennsylvania National Guard. He worked as a staff training assistant for a National Guard unit in Philadelphia. As was required of technicians, the plaintiff was also a member of the National Guard unit for which he worked.

In mid-1967, the American involvement in Vietnam was building, and plaintiff considered volunteering for active duty. He testified that he asked the advice of his commanding officer, Lieutenant Colonel, now General, Merrill W. Goss, and that General Goss told him that his job would be available for him upon his return from active duty should he decide to volunteer. General Goss testified that he did not recall having told the plaintiff that his job would be available to him upon his return, but did recall discussing with the plaintiff his determination to volunteer for active duty.

Having decided to volunteer for active duty in Vietnam, the plaintiff sought the advice of his superior officers as to how to proceed. On June 23, 1967, the Adjutant of plaintiff's National Guard unit wrote to him:

From indications in your letter you definitely desire to go on active duty . . . If so, please indicate in your reply and attach a letter of resignation from the

---

1. The present Adjutant General of the Pennsylvania National Guard is Major General Nicholas P. Kafkalis; he is substituted for the defendant, Mier, pursuant to Fed.R.Civ.P. 25(d)(1).

2. Plaintiff has failed to produce any evidence to support his § 1983 claim.

position as Training Assistant in the Squadron. In addition, letter of resignation should indicate that resignation requested is effective immediately.

The plaintiff responded by letter, stating "In compliance with above referenced letter I hereby resign my position as Staff Asst Trng for the 223D effective upon receipt of active duty orders." The Adjutant returned plaintiff's letter of resignation with instructions that "Letter of resignation should be submitted with an effective date of writing or statement 'immediately'. Further, when submitting letter do not use reference to our letter." On July 12, 1967, the plaintiff submitted the following letter of resignation: "Effective immediately I hereby resign my position as Staff Assistant (Trng) for the 223D Cav." Plaintiff was ordered to active duty and sent to Vietnam.[3]

In February of 1969 and again in May of 1969, before his anticipated release from active duty, the plaintiff wrote to the Pennsylvania National Guard and asked to return to his former job, or, alternatively, a similar position. After his return to Philadelphia, plaintiff contacted defendants' representatives and requested re-employment. Defendants refused to re-employ him, stating that his previous job had been filled and that there was no similar position available.

On October 1, 1970, plaintiff found employment with the Veterans Administration. He now seeks a judicial determination of his claim that the Guard should have given him a military leave of absence at the time he volunteered for active duty in Vietnam, and reinstated him to his former position or a comparable one upon his return.

Plaintiff contends that he was entitled to re-employment pursuant to the Military Selective Service Act of 1967, 50 U.S.C. App. § 451 et seq., and the Vietnam Era Veterans Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021 et seq.

The Military Selective Service Act of 1967 provides in pertinent part:

§ 459. Separation from service

(b) Reemployment rights

In the case of any such person who . . . has left or leaves a position . . . in the employ of any employer and . . . (2) makes application for reemployment within ninety days after he is relieved from such training and service . . .

(A) if such position was in the employ of the United States Government, its Territories, or possessions, or political subdivisions thereof, or the District of Columbia, such person shall—

(i) if still qualified to perform the duties of such position, be restored to such position or to a position of like seniority, status, and pay; . . .

(C) if such position was in the employ of any State or political subdivision thereof, it is declared to be the sense of the Congress that such person should—

(i) if still qualified to perform the duties of such position, be restored to such position or to a position of like seniority, status, and pay; . . .

The Vietnam Era Veterans Readjustment Assistance Act of 1974 provides in pertinent part:

§ 2021. Right to reemployment of inducted persons; benefits protected

(a) In the case of any person who is inducted into the Armed Forces of the United States under the Military Selective Service Act (or under any prior or subsequent corresponding law) for training and service and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such training and service . . . makes application for reemployment within ninety days after such person is

---

**3.** Whether or not plaintiff was told that his job would be available upon his return from active duty, and whether or not he was advised to resign rather than request a military leave of absence are matters which are irrelevant to the issue before this court. Regardless of what

defendants told plaintiff, they were in fact obligated under 51 P.S. § 7301 et seq. to grant plaintiff an automatic leave of absence and to reinstate him to his old job or a comparable one. See pp. 305–306, *infra*.

relieved from such training and service . . .

(A) if such position was in the employ of the United States Government, its territories, or possessions, or political subdivisions thereof, or the District of Columbia, such person shall—

(i) if still qualified to perform the duties of such position, be restored to such position or to a position of like seniority, status, and pay . . .

(B) if such position was in the employ of a State, or political subdivision thereof, or a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or the employer's successor in interest to such position or to a position of like seniority, status, and pay . . .

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so. Nothing in this chapter shall excuse noncompliance with any statute or ordinance of a State or political subdivision thereof establishing greater or additional rights or protections than the rights and protections established pursuant to this chapter.

(b)(1) Any person who is restored to or employed in a position in accordance with the provisions of clause (A) or (B) of subsection (a) of this section shall be considered as having been on furlough or leave of absence during such person's period of training and service in the Armed Forces, shall be so restored or reemployed without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces . . .

(c) The rights granted by subsections (a) and (b) of this section to persons who left the employ of a State or political subdivision thereof and were inducted into the Armed Forces shall not diminish any rights such persons may have pursuant to any statute or ordinance of such State or political subdivision establishing greater or additional rights or protections.

§ 2022.  Enforcement procedures

If any employer, who is a private employer or a State or political subdivision thereof, fails or refuses to comply with the provisions of section 2021(a), (b)(1), or (b)(3), or section 2024, the district court of the United States for any district in which such private employer maintains a place of business, or in which such State or political subdivision thereof exercises authority or carries out its functions, shall have the power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. . . .

§ 2024.  Rights of persons who enlist or are called to active duty; Reserves

(a) Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enlists in the Armed Forces of the United States (other than in a Reserve component) shall be entitled upon release from service under honorable conditions to all of the reemployment rights and other benefits provided for by this section in the case of persons inducted under the provisions of the Military Selective Service Act . . . . .

(b)(1) Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enters upon active duty (other than for the purpose of determining physical fitness and other than for training), whether or not voluntarily, in the Armed Forces of the United States or the Public Health Service in response to an order or call to active duty shall, upon such person's relief from active duty under honorable conditions, be entitled to all

of the reemployment rights and benefits provided for by this chapter in the case of persons inducted under the provisions of the Military Service Act . . . .

The Military Selective Service Act of 1967 provided reemployment rights for returning veterans who had been employed, prior to going on active duty, by private employers or by the federal government. The Vietnam Era Veterans Readjustment Assistance Act of 1974 extended such benefits to state employees. We must therefore consider whether plaintiff, at the time he left for active duty, was a state or federal employee.

[1] Today, National Guard civilian employees, or technicians are federal employees under The National Guard Technicians Act of 1968, 32 U.S.C. § 709, which provides:

§ 709 Technicians: employment, use, status

(a) Under regulations prescribed by the Secretary of the Army . . . persons may be employed as technicians in

(1) the administration and training of the National Guard . . .

(d) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States. . . .

Our Third Circuit has analyzed the policy underlying this statute:

The National Guard Technician Act of 1968 was a congressional response to problems stemming from the ambiguous employment status of full-time civilian technicians who serve in National Guard units throughout the country. They perform such essential and varied services as maintenance of equipment and facilities, training, support of aircraft operations, and clerical functions. Although these technicians, previously called caretakers and clerks, had been paid by the federal government, most were required to hold concurrent National Guard membership as a condition of employment, and were considered state employees. Before the Act's passage, no uniform national programs for their retirement and fringe benefits had been established. Moreover, the uncertain legal status of the technicians led to conflicting court decisions in third party accident claims against the government. The Technician Act gave these civilians federal employee status. To clarify supervisory functions, adjutant generals, although state officers, were made responsible for the technicians' employment and termination of service.

*DiLuigi v. Kafkalis*, 584 F.2d 22, at 24 (3d Cir. 1978).

The effective date of § 709 was January 1, 1969, after plaintiff left his position to go to Vietnam. Section 709 made it clear that National Guard technicians became federal employees on and after January 1, 1969. The legislative history of the Act states:

The bill implements the purpose by converting the technicians to Federal employee status with certain controls on administration and supervision which would as a matter of law remain at the State level. In effect, the technicians will become federal employees, . . . Under the bill all technicians on the effective date of the Act and those to be employed in the future will become federal employees as a matter of law.

1968 U.S.Code Cong. and Admin.News, at 3318, 3320, 3324.

The Supreme Court, prior to the enactment of § 709 of the National Guard Technicians Act of 1968, found National Guard technicians to be state employees:

In sum, we conclude that the congressional purpose in authorizing the employment by state authorities of civilian caretakers, the administrative practice of the Defense Department in treating caretakers as state employees, the consistent congressional recognition of that status, and the like supervision exercised by the States over both military and civilian personnel of the National Guard, unmistakably lead in combination to the view that civilian as well as military personnel of the Guard are to be treated for the purposes of the Tort Claims Act as employ-

ees of the States and not of the Federal Government.

*Maryland v. United States,* 381 U.S. 41, 53, 85 S.Ct. 1293, 1300, 14 L.Ed.2d 205 (1965). It therefore follows that, at the time plaintiff left his position to go to Vietnam, he was a state and not a federal employee, and, as such, he did not have re-employment rights under 50 U.S.C. App. § 459, which excluded state employees.[4]

Plaintiff, as state employee, also claims a right to re-employment under 28 U.S.C. § 2021(a)(B), and jurisdiction in this Court pursuant to 38 U.S.C. § 2022. Defendants assert the following objections to plaintiff's claim under § 2021(a)(B): (1) that the Vietnam Era Veterans Readjustment Assistance Act of 1974 is not retroactive; and (2) that changed circumstances justified the refusal to reinstate the plaintiff.

Defendants argue that, since § 2021(a)(B) did not become effective until December 3, 1974, it should not be applied to the plaintiff, who was a state employee from 1965 through 1967, sought re-employment in 1969, and brought suit in 1975. They correctly assert that a statute is to be given retroactive effect only where Congress has specifically expressed such intent. *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621–22, 11 L.Ed.2d 576 (1964); *United States v. Richardson,* 512 F.2d 105, 106 (3d Cir. 1975). Defendants have, however, misconstrued the concept of retroactivity, apparently claiming that, for a state employee to be entitled to relief under § 2021(a)(B), he must have been employed by the state on or after December 3, 1974, and subsequently have gone on active duty. To apply such reasoning would eliminate all Vietnam veterans who were state employees, since all American troops (with the exception of those missing in action) were out of Vietnam by March 29, 1973, more than twenty months before the Act's effective date.[5] Such could not have been, and clearly was not, the intent of Congress in enacting the Vietnam Era Veterans Readjustment Assistance Act. On the contrary, Congress expressed the specific intent to provide both the right to re-employment (§ 2021(a)(B)) and the opportunity to enforce that right in the United States District Court (§ 2022) for Vietnam veterans who had been employed by a state immediately prior to active duty in the Vietnam conflict:

The Military Selective Service Act of 1967 declares it to be the sense of Congress that States and their subdivisions extend to veterans the same reemployment rights as do the Federal Government or private industry under present law. The provision now relating to State and local governments, however, is not binding under the law and, as a consequence, many returning veterans have found that their jobs in State or local government no longer exist. Furthermore, because these stated reemployment rights are not mandatory upon State and local governments, these veterans lose all benefits which would have accrued to them had they not entered military service.

This year it is expected that an estimated half million Vietnam veterans will be separated from military service. More than half of these young men were employed prior to their entering service. Under the Military Selective Service Act of 1967, those who held jobs with the Federal Government or private industry are assured that their job rights are protected. This is not the case with those veterans who previously held jobs as school teachers, policemen, firemen, and other State, county, and city employees.

Although a number of States have enacted legislation providing reemployment rights to veterans, the coverage, the rights provided, and the availability of enforcement machinery all vary consider-

---

**4.** If we were to find that plaintiff was a federal employee at the time he left for Vietnam, 50 U.S.C. App. § 459 would guarantee him re-employment rights, but this statute provides for enforcement through the United States Civil Service Commission, not the United States District Court.

**5.** 1976 World Almanac and Book of Facts.

ably from state to state. Also, some State and local jurisdictions have demonstrated a reluctance, and even an unwillingness, to reemploy the veteran. Or if they do, they seem unwilling to grant them seniority or other benefits which would have accrued to them had they not served their country in the military.

\* \* \* \* \* \*

The Committee also believes it to be logical and consistent with congressional intent to extend these same rights to veterans who had been employed by State and local governments as well. For this reason, the bill as reported would amend veterans' reemployment rights law to extend coverage to State governments and their political subdivisions.

S.Rep.No.98–907, 93rd Cong., 2d Sess., at 109–110. (June 10, 1974).

Furthermore, we agree with the reasoning of Judge Judd in *Hirschberg v. Braniff Airways, Inc.,* 404 F.Supp. 869 (E.D.N.Y. 1975), wherein the Court, in holding that the Vietnam Era Veterans Readjustment Act had retroactive application, said:

In this case, there is no statutory direction for prospective application only. Nor does the legislative history require prospective application of the 1974 amendment. As shown above, the legislative history supports application of the 1974 amendments to all pending claims.

*Id.* at 873.

■ Defendants contend that, if the Vietnam Era Veterans Readjustment Assistance Act is applicable to them, changed circumstances absolved them from their duty to re-employ plaintiff. The so-called "changed circumstances" claimed by defendants are that plaintiff's position was filled by another person, and that there was no comparable position vacant. Such a contention is obviously without merit. *Kay v. General Cable Corp.,* 144 F.2d 653 (3d Cir. 1944).

■ Plaintiff has also raised a pendent state claim under the Pennsylvania Military Leave of Absence Act, 51 P.S. § 7301 et seq. (formerly 51 P.S. § 493.2 et seq., in effect from 1956–1975), which provides in pertinent part:

§ 7302. Granting military leaves of absence

Whenever any employee shall, in time of war or armed conflict, or emergency proclaimed by the Governor or by the President of the United States, enlist or shall, at any time, be drafted into the active military service of the United States, he shall be automatically granted a military leave of absence. So long as an employee is on military leave of absence, he shall not be removed from his employment and his duties shall either be performed by other employees or by a temporary substitute. During such time he shall not receive any remuneration from his civilian employer.

§ 7303. Expiration of military leaves of absence

(a) Employees who enlisted.—Every military leave of absence granted to an employee by reason of his enlistment in the active military service in time of war or armed conflict, or emergency proclaimed by the Governor or by the President of the United States, shall expire 90 days after the expiration of the first period of his enlistment to expire at a time when the United States is not engaged in a war or armed conflict or emergency proclaimed by the Governor or by the President of the United States.

§ 7304. Reemployment rights

Every employee shall have the right to return to his employment at any time prior to the expiration of his military leave of absence upon notifying his employer of his desire and availability so to return.

Having determined that plaintiff was a state employee at the time he left for active duty, it is clear that he was protected by this statute, which defines "employee" as "Any . . . employee regularly employed by the Commonwealth, in its civil service or otherwise, or by any department, board, bureau, commission, authority, agency, or office thereof . . ." 51 P.S. § 7301. Accordingly, defendants were obli-

gated to place plaintiff on military leave of absence when he volunteered for active duty, and to re-employ him upon his return, his request for re-employment being timely under § 7303.

While the plaintiff is clearly entitled to re-employment under both the state and federal statutes, he no longer seeks re-employment. Instead, he is claiming retroactive seniority status, backpay, and attorneys' fees. Under 38 U.S.C. § 2022, federal district courts are specifically empowered to "compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." Plaintiff is therefore entitled to all employee benefits he would have enjoyed had he been placed on military leave of absence by the Pennsylvania National Guard when he left for active duty and reinstated by them upon his return.

Defendants argue that a retroactive monetary award against the Commonwealth is barred by sovereign immunity and the Eleventh Amendment.[6] The state may, nonetheless, under certain circumstances, be subject to suit in federal court for retroactive monetary relief. There is authority that sovereign immunity and the Eleventh Amendment do not bar suits for retroactive monetary relief against the states, where such legal action is expressly authorized by Congress in exercise of one of its regulatory powers.[7]

The Vietnam Era Veterans Readjustment Assistance Act has been held to be an express authorization, under the Congressional war power, of a backpay award to a veteran, previously employed by a state, who was wrongfully denied re-employment. *Camacho v. Public Service Comm'n,* 450 F.Supp. 231 (D.Puerto Rico 1978); *Schaller v. Bd. of Ed.,* 449 F.Supp. 30 (W.D.Ohio 1978); *Peel v. Florida Dept. of Transportation,* 443 F.Supp. 451 (N.D.Fla.1977), appeal pending No. 77–1846 (5th Cir., argued June 20, 1978). Since the plaintiff has identified no express authorization for an award of attorneys' fees, we hold that he is not entitled to recover attorneys' fees.[8] We do not now determine the plaintiff's entitlement to backpay; we hold only that the Eleventh Amendment and sovereign immunity do not bar an award of backpay, reserving final decision until conclusion of the damage phase of the trial.[9]

---

**6.** The Pennsylvania Supreme Court, in the case of *Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), abrogated the doctrine of sovereign immunity. The Pennsylvania legislature has recently sought to modify the *Mayle* decision by the Act of September 28, 1978, P.L. No. 152 which appears to waive sovereign immunity in certain types of claims against the Commonwealth including claims for "Damages caused by a member of the Pennsylvania military forces", § 5110(a)(8). Federal district courts in Pennsylvania are not in agreement as to whether a waiver of sovereign immunity also constitutes a waiver of the state's Eleventh Amendment protection from suit in federal court without its consent. *Bagby v. Beal,* 455 F.Supp. 881 (M.D.Pa.1978, Muir, J.) and *Hernandez v. Whitesell,* 462 F.Supp. 569 (E.D. Pa.1978, Fullam, J.) hold that a waiver of sovereign immunity does not constitute consent to suit in federal court; to the contrary is *Greenfield v. Vesella,* 457 F.Supp. 316 (W.D. Pa.1978, Ziegler, J.)

**7.** For an exhaustive discussion, *see* Field, The Eleventh Amendment and Other Sovereign Immunity Doctrines: Congressional Imposition of Suit Upon the States, 126 U. of Pa.L.Rev. 1203 (1978).

**8.** *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 456–57, 96 S.Ct. 2666, 2671–72, 49 L.Ed.2d 614 (1976).

**9.** Furthermore, the states' Eleventh Amendment immunity, as defined in *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), applies only to claims which must be paid from public funds in the state treasury:

> Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.

In this case, any potential backpay claim is not a claim which must be paid from public funds in the state treasury; even before National Guard technicians were given full federal employee status in 1969, their salaries were paid by the federal government. 32 U.S.C. § 709 (1957). Thus, the state might seek to satisfy a backpay claim from the same source from which it obtains funds for technicians' salaries. *See e. g., Farr v. Chesney,* 441 F.Supp. 127, 130 (M.D.Pa.1977), where the court discussed the allocation of a backpay claim according to the proportion of the salary paid from state funds.

Accordingly, defendants are liable to plaintiff for their failure to give him a military leave of absence at the time he volunteered for active duty in Vietnam, and for their failure to reinstate him to his former position or a comparable one upon his return. An Order will be entered setting a date for the damage phase of the trial, at which time the appropriate remedy will be determined.

This Memorandum is in lieu of Findings of Fact and Conclusions of Law, pursuant to Fed.R.Civ.P. 52(a).

It cannot be maintained that the United States was without notice of such a potential claim. One of the defendants, the Adjutant General, while a state official, is also an agent of the United States. *Chaudoin v. Atkinson,* 494 F.2d 1323, 1329 (3d Cir. 1973).