UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 96-2213

 ROBERTO TIRADO-ACOSTA, ET AL.,

 Plaintiffs, Appellants,

 v.

 PUERTO RICO NATIONAL GUARD, ET AL.,

 Defendants, Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Carmen C. Cerezo, U.S. District Judge]

 

 Before

 Selya, Circuit Judge,

 Cyr, Senior Circuit Judge,

 and Boudin, Circuit Judge.

 

Rafael F. Castro Lang with whom F. Castro Amy was on brief for
appellants.
Sylvia Roger Stefani, Assistant Solicitor General, Department of
Justice,  with  whom  Carlos Lugo Fiol, Solicitor General, and Edda Serrano
Blasini, Deputy Solicitor General, were on brief for appellees.

 

 July 9, 1997
 

 BOUDIN, Circuit Judge. Plaintiffs in this action, all

members of the Puerto Rico National Guard, were called to

active  duty  in the Persian Gulf War. Prior to active duty and

briefly upon their return, they were employed full-time in a

National Guard program to assist in drug interdiction. Not

long after their return, the plaintiffs' assignment to this

program  was  terminated  by the Puerto Rico National Guard. When

the  plaintiffs sued, the district court ruled that they had no

statutory  right to reemployment in such a program. We affirm.

 The basic facts are not in dispute. The Puerto Rico

National Guard, like the National Guards in all 50 states, is

a hybrid organization. National Guards are ordinarily under

the control of state (or, in the case of Puerto Rico,

Commonwealth) officials, but are organized pursuant to federal

statute,  and  in war time or other emergencies, Guard units may

be brought under federal control. See U.S. Const., art. I,

sec. 8, cl. 16; 32 U.S.C. S 101, et seq.

 In  1989,  Congress  authorized federal funding to permit the

local National Guards to support drug interdiction and other

counter-drug activities. 32 U.S.C. S 112. Section 112

provided  that each state desiring to participate would draw up

its own plan subject to approval by the Secretary of Defense.

Despite this and other authority over the program granted to

the Secretary of Defense, the statute required that the

National  Guard personnel involved in these operations be under

 -2- -2-

local  control and "not in Federal service," id. S 112(c)(1), a

requirement apparently designed to mesh with the Posse

Comitatus Act, 18 U.S.C. S 1385, limiting the use of federal

troops for domestic law enforcement purposes.

 Most National Guard members ordinarily serve only part

time, but there are exceptions. Section 112 itself provided

that subject to Secretary of Defense regulations, local

National Guard members could, pursuant to a state plan, "be

ordered  to  perform full-time National Guard duty under section

502(f) of this title for the purpose of carrying out drug

interdiction  and counter-drug activities." 32 U.S.C. S 502(f)

allows National Guard personnel to be assigned additional

duties, apart from ordinary drills and field exercises, with

the provision appropriate for "pay and allowances."

 Beginning  in  1989,  the  Puerto Rico National Guard used the

federal funds provided under section 112 for a variety of

counter-drug projects. In one of the projects, Puerto Rico

National Guard personnel assisted the U.S. Customs Service in

inspecting cargo containers arriving and leaving Puerto Rico

ports and airports. Each of the plaintiffs in this case is a

Puerto Rico National Guard member who was assigned to work

full-time in 1989 to 1990 in this phase of the counter-drug

program. Minor variations aside, each plaintiff worked under

orders couched in the following terms:

 You are ordered to Active Duty special
 work (ADSW) for the period indicated plus

 -3- -3-

 allowable  travel time. Upon completion of
 the period of ADSW unless sooner relieved
 or extended by proper authority you will
 return  to  the place where you entered ADSW
 and are relieved from such duty.

 According to the memorandum of understanding between the

Puerto Rico National Guard and the Customs Service, "National

Guard personnel employed in support of [the Customs Service]

for counter-drug operations will be under the command of, and

directly  responsible to their military chain of command." The

memorandum also said that "all missions will be executed

through  the  military  chain of command; i.e., tactical direction

of the troops . . . will be left solely to the National Guard

Officers in Charge/Noncommissioned Officer in Charge."

 Thus, the plaintiffs working in the drug interdiction

program  were  ultimately  commanded and controlled by Puerto Rico

National Guard officers, and they were paid for their work by

the Puerto Rico National Guard from funds provided by the

federal government. However, much of the plaintiffs' day-to-

day work was directed by Customs Service officials. The work

itself  did  not  entail  the use of any specialized military skill

but consisted mainly of unloading and reloading cargo

containers or inspecting their contents.

 The  plaintiffs' pay and allowances for full-time National

Guard duty in the program were substantial (e.g., $1,400 to

$2,000 per month). Each plaintiff worked under orders

assigning  him such duty for a relatively brief period, ranging

 -4- -4-

from  2  days  to 61 days, but the orders were regularly renewed.

At  trial  the  plaintiffs  testified that they believed that these

orders  would  be  renewed  indefinitely so long as funding for the

drug interdiction program continued. They said that they had

been given assurances that they would not be dismissed unless

they failed to perform their work satisfactorily.

 In January 1991, all of the plaintiffs were called into

active service on account of the Persian Gulf War and left

their positions in the drug interdiction program. The

plaintiffs completed their active federal military duty in

early  July  1991  and  were  reassigned by the Puerto Rico National

Guard  to  the  drug interdiction program for the period July 11,

1991  to  September  30,  1991. On October 1, 1991, the plaintiffs

were released from full-time duty in the program, and their

positions taken by other Guard personnel.

 In  September  1992, the plaintiffs brought suit in federal

district court in Puerto Rico seeking reinstatement and back

pay. The principal claim brought against the Puerto Rico

National Guard "and/or the United States of America" was that

defendants had violated the plaintiffs' rights under the

Veterans' Reemployment Rights Act ("the Veterans' Act"), then

codified  at  38 U.S.C. S 2021 et seq., by not retaining them in

their full-time drug-interdiction positions following their

 -5- -5-

return from the Gulf War. The United States was later

dismissed as a defendant.1 

 The Puerto Rico National Guard moved to dismiss the

complaint on several grounds, including failure to state a

claim, non-justiciability, Eleventh Amendment immunity, non-

exhaustion of administrative remedies, and untimeliness. The

district  court deemed most of these defenses lacking in merit;

and it said that the merits could not be resolved without

developing  a  factual  record. Accordingly, after discovery, the

district  court  conducted  a bench trial in August 1995 and heard

testimony from both sides. 

 In  a  written  decision  issued August 16, 1996, the district

court dismissed the complaint. It ruled that the plaintiffs

did not have reemployment rights under the Veterans' Act

because their drug interdiction positions were "military in

nature" and therefore beyond the statute's intended coverage;

the  court  did not reach or resolve the defendants' alternative

statutory  defense  that  the plaintiffs be excluded from coverage

because  their  posts  were  "temporary." See 38 U.S.C. S 2021(a).

The district court entered judgment for the defendants, and

this appeal followed. 

 1The complaint also alleged that two individual Guard
officers had violated 42 U.S.C. S 1983 by refusing to retain
the plaintiffs in the program; but this claim was contingent
on a showing of violation of the Veterans' Act and requires
no further discussion.

 -6- -6-

 In our view, the district court was clearly right in its

construction of the federal statute, and we affirm on that

ground without addressing other defenses. Where the result

would  be  the  same, this court has often rejected claims on the

merits without resolving possible jurisdictional objections.

Hachikian  v.  FDIC ,  96  F.3d 502, 506 n.4 (1st Cir. 1996). Here,

the case ought to be decided promptly, in view of the delay

already  suffered by the plaintiffs, and the legal issue is one

that can be decided definitively only by a federal court. 

 We begin with the terms of the Veterans' Act. This

statute, enacted in 1978, carried forward the policy that

Congress  first  adopted  in 1940 to provide employment protection

for veterans returning from military service. Monroe v.

Standard Oil Co., 452 U.S. 549, 554-55 (1981). Although the

Veterans' Act has itself been superseded by a new enactment--

the  Uniform  Services  Employment and Reemployment Act, 38 U.S.C.

S 4301 et seq.--the new statute applies only to reemployments

initiated on or after October 13, 1994. 110 Stat. 3336.

 The Veterans' Act main section granting reemployment

rights is 38 U.S.C. S 2021, which provides protection for

anyone "inducted into the Armed Forces of the United States"

under the selective service statute. A companion section, 28

U.S.C. S 2024, extends similar protection, by cross-reference

back to section 2021, to several other classes of persons

including reservists and others called to "active duty (other

 -7- -7-

than  for  the  purpose of determining physical fitness and other

than for training) . . . ." Concededly, the plaintiffs were

called to active duty in 1991.

 Section 2021(a) provides that an inductee (or by cross-

reference a reservist called to active duty) "who leaves a

position  (other  than  a  temporary position) in the employ of any

employer"  is  entitled to reemployment if sought within 90 days

after release from the military. The conditions and

obligations vary somewhat depending on whether the prior

employer was governmental or private, but it is common ground

that the statute protects prior employment by the federal

government, the states, and the Commonwealth of Puerto Rico.

See 38 U.S.C. S 2021(a); id. S 101(20) (defining the

Commonwealth as a state for this purpose).

 Although  the  Veterans' Act covers "a position (other than

a temporary position) in the employ of any employer," the

defendants argue that the statute was not meant to protect

prior employment in a military position. We consider at the

outset whether the statute, which contains no such limiting

term,  should  be  so  construed; and, finding that it should be so

read, we then return to the question whether the plaintiffs'

former positions in the drug interdiction program should be

regarded as unprotected military positions. Both are legal

questions, but of slightly different character. 

 -8- -8-

 As we have noted, no express term in the Veterans' Act

limits a protectible former "position" to a position in

civilian employment or excludes from the category of

protectible  positions a military assignment. Nevertheless, it

is  apparent  to  us  that  the statute must be thus construed. The

evidence for this conclusion is provided by the structure and

purpose of the statute, by extrinsic policy safeguarding the

autonomy of military organizations, and by the lack of

precedent extending reemployment protection to military

positions.

 First, the very design of the Veterans' Act makes clear

its central aim was to protect those who were inducted or

otherwise drawn into military life and thereby required to

surrender  their  civilian  jobs. The Supreme Court, for example,

has spoken of the Veterans' Act as relating to "military

service after which a member of the Armed Forces retains the

right to civilian employment." King v. St. Vincent's Hosp.,

502  U.S.  215,  216  (1991). Congress probably did not insert the

word "civilian" before "position" simply because it seemed

unnecessary to add a term made almost redundant by context. 

 Each of the provisions providing reemployment protection

is  directed  at  persons  who cross the barrier from civilian into

military life: the inductee (section 2021), the enlistee

(section 2024(a)), the reservist entering upon active duty

(other than for physical fitness testing or for training)

 -9- -9-

(section 2024(b)), and certain persons who enter upon active

duty for training or inactive duty training (subsections (c)

and  (d)).   It  is  persons  who leave "a position" to perform such

duties and thereafter seek to "be restored to such position"

who are protected. 38 U.S.C. S 2021(a).

 There is simply no hint in all this that when Congress

sought to protect prior employment, it intended to protect

prior employment in a military capacity. It is true that

civilian  employees of state and federal military organizations

are  themselves  protected  if called to active duty. See Panigua

v. Department of the Air Force, 13 M.S.P.R. 306, 307-09

(M.S.P.B. 1982). But such civilian employees of the military

are akin to civilian employees of any other department of

government. Military employees are a different matter.

 This brings us to a further, reenforcing reason why we

decline to read the Veterans' Act to protect reemployment

rights  in  former  military positions. The courts have long been

reluctant to interfere with internal military decisionmaking,

including  personnel decisions. With only rare exceptions, the

courts  have  taken  the  view that assignments within the military

structure  are matters to be decided by the military and not by

the courts. See Orloff v. Willoughby, 345 U.S. 83, 93-94

(1953). The reasons are too obvious to need elaboration.

 In some situations, this view is expressed by deeming a

controversy to be nonjusticiable, Wright v. Park, 5 F.3d 586,

 -10- -10-

589-91  (1st  Cir. 1993); in others, it takes the form of giving

great deference to the military's judgment on the matter at

hand. Richenberg v. Perry, 97 F.3d 256, 261 (8th Cir. 1996).

But the underlying notion is that matters of military

organization, personnel and operations are extremely sensitive

and that courts will do more harm than good by interfering. 

Congress  can  provide otherwise by statute, but rarely does so.

 Thus, we conclude that Veterans' Act protections do not

extend to affording anyone reemployment rights in a military

position. However generously the Veterans' Act may be

construed to protect prior civilian employment, Tilton v.

Missouri P.R.R., 376 U.S. 169, 181 (1964), Congress did not

intend  that  anyone  should have a preemptive claim to his former

position as an air force pilot or an army tank commander.

Whether the plaintiffs' positions in the Puerto Rico National

Guard  drug  interdiction program should be viewed as sharing in

this  "military" character is a different issue to which we now

turn.

 It  is  clear  from section 112 and the orders issued to the

plaintiffs that their participation in the drug interdiction

program  was  the  performance of "full-time National Guard duty."

The  drug  interdiction  statute, 32 U.S.C. S 112(b), provides for

Guard personnel to perform such National Guard duty "under

section 502(f)" to carry out drug interdiction; and section

502(f)  allows Guard members to be ordered to perform "training

 -11- -11-

or other duty" in addition to assembly for drills and

encampment.   The  orders  issued to the plaintiffs made reference

to section 502(f) and, in certain cases, section 503 which is

a companion provision involving joint exercises with the army

or the air force.

 In addition, the evidence shows that the plaintiffs were

participating in the drug interdiction program pursuant to

military  orders and were subject to the command and control of

Guard  officers.   Indeed,  it appears likely that the plaintiffs'

full-time  positions  in  the drug interdiction program might have

allowed  them  to claim reemployment rights in any civilian jobs

they  held  at  the  time  they entered upon full-time duty. See 38

U.S.C. S 2024(c)(d); id. S 101(22)(C). In all events, full-

time National Guard duty by a Guard member under military

orders appears to us quintessentially military in character. 

 It  is  quite  true that the physical tasks performed by the

plaintiffs could have been, and commonly were, performed by

customs  officers  who  were not in military service. But this is

common: one can be a cook or a pilot or a radio operator in

either military or civilian life. National Guard members

called to duty to build up the dikes in a flooded area are

still part of the military even though they are engaged in

construction work. Given Congress' intent to protect prior

civilian jobs for those serving in the military, it is the

nature  of  the employment--not its functions--that is decisive.

 -12- -12-

 The same result follows from extrinsic policy. It would

directly offend the tradition of non-interference in military

assignments for a court to direct that the plaintiffs be

restored to performing specific functions as National Guard

members assigned to full-time duty in the drug interdiction

program. The Puerto Rico National Guard cited as reasons for

its reshuffling of personnel "unity of command" and "rank."

The  plaintiffs  say  that  these objectives could have been met by

a  different  reorganization that retained their jobs; but making

these evaluations is just what courts are reluctant to do.

 It remains to refer briefly to cases involving Guard

employees governed by the National Guard Technicians Act of

1968, 32 U.S.C. S 709. These technicians are "full-time

civilian  employees  of  the National Guard" who are also, in most

cases, required to hold "concurrent National Guard membership

as a condition for their civilian employment." H.R. Rep. No.

90-1823, at 2 (1968). E.g., Wright, 5 F.3d at 587 (full-time

aircraft maintenance specialist).

 In  a  number  of  cases,  a  National Guard technician has been

called to active service and forced to surrender his civilian

technician duties with the Guard. The question has arisen

whether this technician position is protected under the

Veterans'  Act  after  active duty ends. One district court ruled

in  favor  of  coverage, although it assumed rather than analyzed

the statutory-coverage issue, and several other courts have

 -13- -13-

been willing to assume such coverage in denying th

technician's reemployment protection on other grounds.2

 H arguendo e ow  this  court  would  decide such a case is unclear. There

is language in Wright v. Park that would lean against

protection, although the rights claimed by the technician in

that  case  were not under the Veterans' Act but under the Civil

Rights  Act,  42 U.S.C. SS 1983, 1985, and the federal and state

whistle-blower statutes. On the other hand, a passing

reference in the new reemployment statute that has supplanted

the Veterans' Act may give some support to National Guard

technicians who claim reemployment protection. See 38 U.S.C.

S 4304(4)(B); see also H.R. Rep. No. 103-65, at 21 (1994).

However such cases might be decided, we think that National

Guard technicians are clearly distinguishable from the

plaintiffs in this case. 

 National Guard technicians are employed full-time by the

Guard in a civilian capacity. In this respect, they are

arguably protected under the Veterans' Act like any other

civilian  employees  of  a  federal or state military organization.

The difficulty, where such civilian positions are tied to

membership in the National Guard, is that reinstatement would

require either that the military tie-in be waived or that a

 2See Witter v. Pennsylvania Nat'l Guard, 462 F. Supp.
299, 305-06 (E.D. Pa. 1978); see also Polos v. United States,
621 F.2d 385, 389-90 (Ct. Cl. 1980); Leistiko v. Secretary of
Army, 922 F. Supp. 66, 76 (N.D. Ohio 1996).

 -14- -14-

military position also be made available. The issue was

avoided in Witter because plaintiff in that case no longer

sought reemployment but merely monetary compensation. 462 F.

Supp. at 306.

 In  any  event, the plaintiffs in the present case were not

employed  as  technicians with the curious dual capacity of that

position: full-time civilian employment with an adjunct

military role. The plaintiffs' only status was as "full-time

National Guard" members assigned, under a state plan approved

by the Secretary of Defense, to work under military orders in

the drug interdiction program. Even assuming that this court

might  follow  Witter  and  extend protection to technicians--which

is far from clear--this would not affect our decision in the

present case that the plaintiffs are not protected by the

Veterans' Act.

 To  this  point, we have said little about the new federal

statute  which, as of October 1994, supplants the Veterans' Act

and provides a new framework for reemployment rights of

veterans.   This new statute does not apply to the present case

and is not direct evidence of the intent of the Congress that

enacted the Veterans' Act. But the new statute is in certain

respects  a  reenactment  of the Veterans' Act in somewhat clearer

language,  and  it  would  certainly be deserving of mention if the

new  version  were  strongly favorable either to the plaintiffs or

the defendants.

 -15- -15-

 The  fact  is  that the new statute carries forward the same

ambiguity  in  literal language that afflicts the Veterans' Act.

It protects, subject to certain conditions, "any person whose

absence  from  a  position  of employment is necessitated by reason

of service in the uniformed services . . . ." About the most

to be said is that the new statute provides that "full-time

National  Guard duty" is included in the definition of "service

in the uniformed services," 38 U.S.C. S 4303(13), reenforcing

our view that the plaintiffs here passed over to the military

domain  when  they  accepted full-time National Guard duty as part

of the drug interdiction program.

 Affirmed.

 -16- -16-