Pasquale DiLUIGI, Appellant in 77-2433,

v.

Major General Nicholas P. KAFKALAS, Individually and in his capacity as Adjutant General of Pennsylvania, Appellant in 77-2434.

Nos. 77-2433, 77-2434.

United States Court of Appeals, Third Circuit.

Argued July 26, 1978.

Decided Sept. 19, 1978.

Warren J. Borish, Bruce E. Endy, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for appellant, Pasquale Di Luigi.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., S. John Cottone, U. S. Atty., Scranton, Pa., William Kanter, Paul Blankenstein, Appellate Section, Civil Div., Dept. of Justice, Washington, D. C., for appellant, Major General Nicholas P. Kafkalas.

Before ADAMS, WEIS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Whether a newly appointed National Guard technician has a property interest in his employment is the nub of this appeal. The district court determined that administrative regulations imposing a period of probation without tenure were inconsistent with a statutory provision that an employee may be discharged only for cause.[1] After an analysis of statutory purposes and legislative history, we conclude that the regulations may be read in harmony with the statute. Accordingly, we vacate the judgment of the district court in favor of the plaintiff.

Plaintiff was hired as an electronics mechanic for the Pennsylvania National Guard under the provisions of the National Guard Technician Act of 1968, 32 U.S.C. § 709. His appointment began on June 16, 1975, and was stated in writing to be conditioned upon completion of a one-year trial period. Despite in-grade pay increases during his first six months on the job, plaintiff was advised on March 23, 1976 that his employment would be terminated on the recommendation of his superior, Captain Edgar. Reporting to the facility commander, Colonel Hanna, Edgar had written that the

---

1. The opinions of the district court are reported at *DiLuigi v. Mier*, 430 F.Supp. 1098 (M.D.Pa. 1977), and *DiLuigi v. Kafkalas*, 437 F.Supp. 863 (M.D.Pa.1977).

plaintiff's "conduct and character traits are such that retention in Federal service is not recommended." This evaluation was made pursuant to a regulation requiring that a supervisor submit a recommendation as to further employment after reviewing the performance and conduct of a technician during the first nine or ten months of service.

Within a few days after he was apprised of the suggested discharge, the plaintiff met with Colonel Hanna at least four times to discuss the evaluation. Captain Edgar and plaintiff's employee representative were present at various times and the plaintiff responded to the complaints against him. Nevertheless, on March 25, 1976, Hanna told plaintiff that Edgar's recommendation would be approved, and on March 29, the Adjutant General's office wrote that the discharge would be effective April 30, 1976. The letter gave as reasons for termination "[i]nability to cope with certain responsibilities inherent with your position . . ." and "[i]nability to grasp and maintain basic fundamentals required of your position . . .."

Plaintiff then turned to the district court, alleging that because he had been terminated without cause and had not been given adequate notice or hearing, he was entitled to reinstatement, back pay, and punitive damages. Although the source of the plaintiff's cause of action was somewhat uncertain at first, eventually the district court determined that the claims were within its jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2), and a monetary award could be based upon the Back Pay Act, 5 U.S.C. § 5596(b).[2]

The district court concluded that the plaintiff had a property right to continued employment under the terms of the Technician Act and could not be terminated without notice and a hearing. After a bench trial, the court found that the written notice afforded the plaintiff had been inadequate since it gave him only "the vaguest idea of the reasons for his discharge" and that the oral reasons given by Hanna and Edgar were indefinite. Without determining whether the various pretermination interviews satisfied the requirement of a hearing, the court decided that lack of adequate written notice constituted a deprivation of due process. The Adjutant General was thereupon directed to reinstate the plaintiff and reimburse him for back pay. The defendant, however, was given leave to institute new termination procedures complying with due process after plaintiff had been reinstated. In due course, plaintiff was reemployed, but was again discharged after new proceedings were completed.

In this appeal, the defendant challenges the order directing reinstatement and awarding back pay. The plaintiff cross-appeals on a number of grounds but essentially from the district court's refusal to preclude the defendant from instituting a new termination proceeding.

---

2. 28 U.S.C. § 1346 provides that a district court has original jurisdiction of a claim against the United States not exceeding $10,000. Because of this jurisdictional limit, the plaintiff agreed to waive damages in excess of $10,000. See *Commonwealth of Pennsylvania v. National Ass'n of Flood Ins.*, 520 F.2d 11, 25 (3d Cir. 1975), citing *Perry v. United States*, 308 F.Supp. 245 (D.Colo.1970), aff'd, 442 F.2d 353 (10th Cir. 1971).

The Tucker Act, being only a jurisdictional statute, does not create a substantive right enforceable against the United States for money damages. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A claim for back pay by a federal employee, however, is authorized by 5 U.S.C. § 5596(b), which allows retroactive recovery of wages whenever an employee "is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that had resulted in the withdrawal or reduction of all or part of the pay . . . of the employee . . . ." See also *Polos v. United States*, 556 F.2d 903, 905–06 & n.5 (8th Cir. 1977).

Jurisdiction of the district court under § 1346 is concurrent with that of the Court of Claims, which is authorized in any case within its jurisdiction, "[t]o provide an entire remedy and to complete the relief afforded by the judgment the court may, as an incident of and collateral to any such judgment, [to] issue orders directing restoration to office or position, . . . and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491. See *Richardson v. Morris*, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) (per curiam).

The National Guard Technician Act of 1968 was a congressional response to problems stemming from the ambiguous employment status of full-time civilian technicians who serve in National Guard units throughout the country. They perform such essential and varied services as maintenance of equipment and facilities, training, support of aircraft operations, and clerical functions. Although these technicians, previously called caretakers and clerks, had been paid by the federal government, most were required to hold concurrent National Guard membership as a condition of employment, and were considered state employees. Before the Act's passage, no uniform national programs for their retirement and fringe benefits had been established. Moreover, the uncertain legal status of the technicians led to conflicting court decisions in third party accident claims against the government. The Technician Act gave these civilians federal employee status. To clarify supervisory functions, adjutant generals, although state officers, were made responsible for the technicians' employment and termination of service.

Both House and Senate Reports indicate that the technicians were to be treated insofar as possible like other federal employees covered by the civil service legislation, and, where divergence was necessary, specific provisions were drafted. Because of the requirement for maintaining membership in the Guard itself, about 95% of the technicians were to be accorded noncompetitive federal status while 5%, principally clerk-typists and security guards who were not required to have military status, were to be placed in the competitive civil service classification. *See* S.Rep.No.1446, 90th Cong., 2d Sess. 5; H.R.Rep.No.1823, 90th Cong., 2d Sess. 6, *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 3318, 3324.[3]

The crux of this case is the interpretation to be given the termination segment of the Act, 32 U.S.C. § 709(e), which reads:

"(e) Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—

. . . . .

(3) a technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned."

The district court reasoned that the phrase, "for cause," created in the plaintiff a property interest in continued employment and rejected defendant's contention that regulations promulgated by the Secretary of the Army created a class of probationary employees who had not attained tenure status.[4] Remarking that no regulation explicitly negated a probationer's entitlement to a "for cause" termination, the court stated that the regulations only set out the process due such an employee when he is dis-

---

**3.** The competitive service in the executive branch consists of all civil service positions except positions to which appointments are made by nomination for Senate confirmation and those specifically excepted by statute. *See* 5 U.S.C. §§ 2102(a)(1), 2103(a). Congress delegated broad power to the President to establish qualifications and conditions of employment. 5 U.S.C. § 3301. The President in turn delegated much of this authority to the Civil Service Commission by Executive Order. Except as expressly provided, rules promulgated by the Commission do not apply to the excepted service. *See* 5 C.F.R. § 1.1 (1978). "[A]ppointments and position changes in the excepted service shall be made in accordance with such regulations and practices as the head of the agency concerned finds necessary." 5 C.F.R. § 6.3(b) (1978).

The Technician Act provides:

"(d) A technician . . . is an employee of the Department of the Army or the Depart-

ment of the Air Force, as the case may be, and an employee of the United States. However, a position authorized by this section is outside the competitive service if the technician employed therein is required under subsection (b) to be a member of the National Guard." 32 U.S.C. § 709(d).

**4.** In *Tennessee v. Dunlap*, 426 U.S. 312, 316, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976), the Court, in discussing the validity of due process claims of a technician whose term of enlistment in the National Guard had expired, acknowledged that the section creates a property interest in continued employment although confined to the guardsman's term of enlistment. In that case, however, the Court had no occasion to consider whether the interest arose before the technician had completed his probationary or trial period.

charged and, in any event, a regulation in conflict with § 709(e)(3) would be invalid.

Facially there may appear to be some discrepancy between the precise language of the statute and the regulations, but to determine whether there is support for the Secretary's position, it is important to examine the legislative history. A review of that source convinces us that the establishment of a one-year probationary period is in accord with congressional intent in passing the Act.

■ Congress was conscious of the fact that most of the technicians would be in the noncompetitive or excepted category of civil service employment and hence, would not have the benefit of tenure or the procedural protection provided competitive-classified employees. Accordingly, the clear import of the termination for cause provision was to accord all technicians an assurance of continuing employment similar to that given other federal employees. Indeed, the few technicians whose status was classified as competitive unquestionably were entitled to this. There is no indication that Congress intended to grant greater advantages to 95% of the technicians than other civil service employees, nor to deny the government the opportunity to further evaluate these new employees during a trial period.

Although the statute does not mention a probationary stage for new employees, provision for some trial period by the "Secretary concerned" is not inconsistent with the congressional purpose. In discussing the credit for past service to be afforded the newly assimilated federal technicians, both legislative reports state:

"For 95 percent of the technicians, who will be required to hold military member-ship in the Guard and who will be in the noncompetitive category, past service is relevant *for the purpose of completing the 1-year probationary period of Federal employment which is generally required prior to entering a career status.*

"For 5 percent of the technicians who will be in the competitive category, past service is significant not only *for the 1-year probationary period* but for credit in order to complete the 3-year period of career conditional employment prior to becoming a career employee." S.Rep.No. 1446, 90th Cong., 2d Sess. 7; H.R.Rep.No. 1823, 90th Cong., 2d Sess. 8, *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 3318, 3326 (emphasis added).

Pursuant to the statutory direction, the Secretary of the Army compiled regulations styled the Technician Personnel Manual (TPM).[5] In discussing a probationary interval for further evaluation of the fitness and capacity· of new technicians, the Manual reads:

"1–6. TRIAL PERIOD

a. The trial period is the final and highly significant step in the overall evaluation of a technician. It provides the final indispensable test, that of actual performance on the job, which no preliminary evaluation can approach in validity. During the trial period, the technician's conduct and performance in the actual duties of his position may be observed, and he may be separated from technician employment without undue formality . . . ..

\*     \*     \*     \*     \*     \*

4–3. CONTROL IN THE EXCEPTED SERVICE

---

5. The Technician Personnel Manual describes itself as the "official publication containing instructions to the several States . . . on matters of National Guard technician personnel management . . . prescribed under 32 U.S.C. § 709 . . . for the administration of National Guard technicians," and modifies and supplements civil service personnel regulations and the Civil Service Commission's Federal Personnel Manual. TPM 001, Introduction (Aug. 21, 1972). Technician Personnel Pamph-

lets (TPP), daily working guidelines, are used by supervisors for administration of technical personnel.

TPP 904 (May 25, 1972) provides:

"3–7. Trial Periods in the Excepted Service.

"Technicians appointed in the excepted service are required to serve a trial period of 1 year. During the trial period their conduct and performance may be observed, and they may be separated without undue formality if circumstances so warrant."

a. Initial appointments in excepted positions will require incumbents to serve a 1-year trial period." TPM 300:302.1, 300.4 (Sept. 18, 1972).

The Manual further provides that technicians are subject to civil service laws and regulations except as modified by the TPM. References are made to the fact that provisions of subchapter 8, chapter 315 of the Federal Personnel Manual, governing probationary competitive service employees are also applicable to technicians in the excepted (noncompetitive) service. The Federal Personnel Manual in turn tracks 5 C.F.R. § 315.802–.805 (1978) in providing for a probationary period of one year, permitting termination during this period if the employee fails to demonstrate fully his qualifications for continued employment and requiring that termination be in writing with reasons, which shall, "at a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct."

Thus, it is clear that there are incorporated and expressed regulations promulgated by the Secretary of the Army requiring a trial period of one year. The action taken by the Adjutant General conforms to the requirements of the Guard as well as the civil service regulations pertaining to other probationary employees. The net result is that plaintiff received the same treatment as any civil service probationary employee, consistent with congressional purpose in enacting the Technician Act. The fact that 32 U.S.C. § 709(e) does not specifically mention a trial or probationary period does not prevent a conclusion that such an exception to the cause requirement exists.

Congress clearly did not intend the statutory provisions to be all inclusive as to the terms of employment. In both subsection (a) of § 709, relating to employment, and subsection (e), referring to termination, the statute precedes its authorization by using the language, "under regulations prescribed by the Secretary." The district court reasoned that Congress, by inserting the phrase in the latter subsection, did not sanction rules establishing a probationary period during which technicians could be discharged for less than cause. The court found particularly significant the fact that the "cause" provision was *under* rather than *subject to* regulations promulgated by the Secretary.

■ We are not persuaded that Congress attached any different meaning to "under" rather than "subject to" and, indeed, the legislative history uses the phrases interchangeably. The legislative reports, for example, use the words, "pursuant to secretarial regulations" in discussing an adjutant general's authority to employ and discharge technicians.[6] Legislative reliance upon regulations to flesh out the statutory skeleton, moreover, is consistent with the procedure followed in the civil service field. We conclude that the regulations establishing a trial or probationary period are not in conflict with the statute, but rather are in concert with congressional intention to put the technicians in the same position as civil service employees to the extent reasonably possible. In the setting of the Technician Act, therefore, the regulations and statute should be construed as a whole and only in the instance of clear inconsistency should a regulation be nullified.

We do not overlook the fact that since plaintiff received written notice that his appointment was on a trial basis, he had no real expectancy of tenure before entering permanent employment. *See Board of Regents v. Roth*, 408 U.S. 564, 577–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 599–603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Although he did have certain procedural rights in connection with his termination, these rested not on a constitutional foundation but rather on the regulations themselves, admitted-

**6.** In referring to the authority of the adjutant general, the House Report reads:

"The bill provides that the Adjutant General shall accomplish any actions involving reduction in force, removal, or an adverse action involving *discharge* from technician employment, suspension, furlough without pay, or reduction in rank or compensation. This authority would be *subject to* secretarial regulations."

ly satisfied by the Adjutant General. Consequently, the plaintiff was properly discharged.[7]

The judgment of the district court will be vacated and judgment will be entered for the defendant.

---

7. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), holds that a post-termination hearing satisfies due process requirements in an employee discharge case.

Our resolution of this appeal makes it unnecessary to consider whether an order for post-termination notice and hearing, rather than reinstatement, would be the proper remedy.