Sgt. James T. CURTIN et al., Plaintiffs,

v.

Capt. William A. HENDERSON et al., Defendants.

No. CV 80 3207.

United States District Court,
E. D. New York.

Dec. 5, 1980.

MEMORANDUM OF DECISION
AND ORDER

COSTANTINO, District Judge.

The plaintiff Sergeant James T. Curtin ("Curtin") was employed by the New York

Air National Guard as a probationary supply technician.[1] On October 17, 1980, Curtin received written notice from the defendant Captain William Henderson, ("Henderson"), Curtin's immediate supervisor, that he was to be terminated from his employment because of "unsatisfactory performance." Curtin contends that his firing was based solely upon false and fraudulent entries made by Henderson in plaintiff's personnel file. Curtin appealed this decision to several levels of review pursuant to the Collective Bargaining Agreement between the State of New York Division of Military and Naval Affairs and the Association of Civilian Technicians, Inc., but each appeal was denied on the ground that probationary employees have no right to a hearing prior to termination under both federal personnel regulations and the Collective Bargaining Agreement.[2]

Before exhausting the grievance review procedures,[3] Curtin instituted this action to enjoin the termination of his employment and to recover monetary damages against Henderson for libel and slander. Basing his complaint upon Title VII of the Civil Service Reform Act and upon the Civil Rights Act Title 42, United States Code, Sections 1983, 1984 and 1985, Curtin contends that even as a probationary employee, he is entitled to a grievance hearing and should be allowed to rebut Henderson's alleged falsehoods in a due process forum prior to his dismissal. In the instant proceeding, plaintiffs have made a motion for a preliminary injunction requesting that Curtin's termination be enjoined until the issue of his entitlement to a due process hearing is resolved.

■ To be granted a preliminary injunction under Rule 65(a) of the Fed.R.Civ.P., the moving party must demonstrate (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *United States v. Bedford Assoc.*, 618 F.2d 904, 912 n.15 (2d Cir. 1980); *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). The plaintiffs' failure to meet either of these two prongs mandates a denial of this motion.

■ Curtin, in attempting to show a likelihood of success on the merits, contends that as a probationary employee he possessed a property interest in his continued employment which could not be denied absent due process. Relying on *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), Curtin states that the failure in the past of the Personnel Office of the New York Air National Guard to dismiss any probationary employees created an expectancy in continued employment and concomitantly a property interest.[4]

The *Perry* decision is completely at odds with the facts in this case. The *Perry* plaintiff along with the other teachers in the college was aware that the school did

---

1. Curtin was employed pursuant to 32 U.S.C. § 709, the National Guard Technician Act. Moreover, subsection (d) of Section 709 provides in pertinent part that "[a] technician . . . is an employee of the Department of Army or the Department of the Air Force, as the case may be, and an employee of the United States."

2. The grievance procedures are set forth in Article 12 of the Collective Bargaining Agreement and Title VII of the Civil Service Reform Act, 5 U.S.C. § 7101 *et seq.*

3. Curtin filed a grievance with the Adjutant General, Major General Vito J. Castellano; to date, no final decision has been reached regarding this appeal.

4. Plaintiffs have also asserted that Curtin is guaranteed a hearing by the Collective Bargaining Agreement between the State of New York Division of Military and Naval Affairs and the Association of Civilian Technicians, Inc. ("Agreement"). However, the Agreement does not appear to guarantee this right. Rather, the Agreement was signed subject to the regulations of the Department of the Army and the Air Force, *see* Agreement, Article 3, Section 1(b), and the regulations of the Army and the Air Force specify that a probationary employee is not entitled to a hearing prior to termination, *see* Note 7, *infra.* The court concludes therefore that the Agreement grants no due process right to Curtin.

not have a tenure system; but if faculty members employed for a significant period performed satisfactorily, the college in the faculty guide encouraged teachers to believe that they were permanent. Contrary to plaintiffs' position, the facts in the instant action are in line with those in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) wherein the court concluded that the respondent's property interest was created by the terms of his employment and since he was retained for only one school year, he had no right to a hearing to question the reasons for his subsequent nonretention.

As in *Roth*, Curtin was employed on a limited basis as a probationary technician and subject to the provisions of the Technician Personnel Manual promulgated by the Secretaries of the Army and Air Force.[5] Chapter 302.1–6 of this manual provides in pertinent part that:

A. The trial period is the final and highly significant step in the overall evaluation of a technician. It provides the final indispensable test, that of actual performance on the job, which no preliminary evaluation can approach in validity. During the trial period, the technician's conduct and performance in the actual duties of this position should be observed, and he may be separated from technician employment if circumstances warrant. Thus, the trial period, properly employed, provides protection against the retention of any technician who, in spite of having passed any preliminary evaluation, is found in actual practice to be lacking in fitness and capacity to acquire fitness for permanent Government service.

In addition to stressing the significance of the probationary period, removal procedures set forth in the manual specifically

provide that a probationary employee has no right to a hearing prior to or subsequent to his dismissal.[6] This distinction is the major difference between probationary and nonprobationary employees, *see Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); whereas a nonprobationary technician removed for cause must be afforded a due process hearing prior to termination, *Tennessee v. Dunlap*, 426 U.S. 312, 96 S.Ct. 34, 48 L.Ed.2d 660 (1976), a probationary employee possesses no such right despite the fact that Section 709(e) states that a technician may be removed only for cause. Absent this result, there would be little reason to distinguish between probationary and nonprobationary workers. *DiLuigi v. Kafkalas*, 584 F.2d 22 (3d Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979). Any procedural rights possessed by Curtin under the terms of employment were conferred solely by regulations of the Department of the Army and the Air Force. Since it would appear that he received proper written notice along with the reasons for dismissal, the procedural safeguards to which Curtin was entitled were satisfied.

■ Moreover, it is clear that plaintiffs' claim against Henderson for libel and slander will not support a demand for a preliminary injunction. As noted above, Curtin alleges that Henderson inserted false statements in Curtin's personnel file and those alleged falsehoods led to Curtin's dismissal. Arguably Henderson's alleged libellous statements could support a claim that a "liberty" interest was denied without a hearing, but this theory was explicitly rejected by the Supreme Court in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) wherein the court noted that "[t]he Due Process Clause . . . is not a

---

5. Pursuant to 32 U.S.C. § 709(c) and (e), the Adjutant General of each state is given the right to employ and discharge employees.

6. Section 709 establishes that the employment of technicians is subject to regulations promulgated by the Secretaries of the Army and the Air Force. To this end, the Secretaries issued the Technician Personnel Manual. With regard specifically to the termination of probationary

employees, the manual through Chapter 302.3 is tied into the procedures set forth in Chapter 315, subchapter 8 of the Federal Personnel Manual and in the Federal Personnel Manual, probationary employees are merely entitled to notice and the information on why the employee was terminated. *See* Federal Personnel Manual, Chapter 315, subchapter 8–4.

guarantee against incorrect or ill-advised personnel decisions." *Id.* at 350, 96 S.Ct. at 2080. *See Walker v. Alexander*, 569 F.2d 291 (5th Cir. 1978). This avenue of relief although not explicitly requested by plaintiffs would appear at this point to be fruitless and cannot provide the basis for a preliminary injunction.

In determining whether there are "sufficiently serious questions going to the merits," *United States v. Bedford Assoc.*, 618 F.2d at 912, n.5, this court must ascertain whether the issues raised are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953), *quoted in Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 205 (2d Cir. 1966). *See Mulligan, Forward: Preliminary Injunction in the Second Circuit*, 43 Brooklyn L.Rev. 831 (1977).

At this point, plaintiffs have failed to demonstrate to this court that there are serious, substantial, difficult and doubtful issues involved in this action.[7] As previously mentioned, the question at issue involves Curtin's right to a due process hearing in light of his status as a probationary employee. While the court acknowledges that this issue is of importance to the plaintiffs, it does not meet the requirements for a preliminary injunction. Moreover, were the court to grant the requested relief, it would disrupt the administrative functions of the Departments of the Army and the Air Force which must be granted the "widest latitude in the dispatch of [their] own internal affairs . . ." *Sampson v. Murray*, 415 U.S. 61, 83, 94 S.Ct. 937, 949, 39 L.Ed.2d 166 (1974), *quoting Cafeteria Workers v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743 (1961).

Finally, even if the plaintiffs had adequately established the importance of their claims or the likelihood of success on the merits, the plaintiffs' motion would nonetheless have to be denied for failure to show that a denial of such relief would cause irreparable injury. As noted in *Sampson v. Murray, supra,* the loss of income with the concomitant loss of reputation resulting from the dismissal is not the sort of irreparable harm which is an essential predicate to the issuance of injunctive relief. 415 U.S. 91–92, 94 S.Ct. at 952–953. While the threatened injury is "actual and imminent," *New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 755 (2d Cir. 1977), Curtin's injury could be compensated by a monetary award and is therefore not irreparable. *Jackson Dairy, Inc. v. H. P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir. 1979).

The motion is denied and the stay on Curtin's dismissal is hereby removed.

So Ordered.

---

**7.** While not attempting at this time to dispose of plaintiffs' cause of action based on Section 1983, it does not appear to this court that plaintiffs have demonstrated the requisite "state action." Defendants are given the authority pursuant to 32 U.S.C. § 709(c) and (e) to hire and terminate employees. Since the defendants appear to be federal employees acting through federal law, it seems that there is no "state action" essential to the Section 1983 claim.