**Fred A. LEISTIKO, Plaintiff,**

v.

**SECRETARY OF the ARMY, et al., Defendants.**

Nos. 5:92 CV 0173, 5:93 CV 0067.

United States District Court,
N.D. Ohio,
Eastern Division.

March 20, 1996.

Michael Drain, Chagrin Falls, OH, and Constance Leistiko, Canton, OH, for plaintiff.

Michael Anne Johnson, Office Of The U.S. Attorney, Cleveland, OH, Nancy A. Higgins, Major, and W. Gary Jewell, Lieut. Colonel, United States Army, Litigation Division, Arlington, VA, for defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss and/or for Summary Judgment. For the following reasons, Defendants' Motion will be granted.

### I. BACKGROUND

Plaintiff Fred A. Leistiko was employed as a National Guard Supervisory Aircraft Pilot, GM-2181-14, a federal civilian technician position subject to the provisions of 32 U.S.C. § 709. The National Guard Technician position is a hybrid military-civilian position that required Leistiko also to maintain dual status as both a member of the Ohio National Guard and as a federal civilian technician. Leistiko was further required to maintain status as a "rated aviator."

On May 18, 1990, Leistiko experienced a neurological incident during an Ohio National Guard helicopter flight. Three months later, Leistiko was medically disqualified from further aviation service, both because of evidence that Leistiko had suffered a *grand mal* seizure in the helicopter, and because Leistiko has cardiac arrhythmia. Either medical impairment alone is permanently disqualifying.

Effective January 25, 1991, Leistiko was terminated by the Ohio National Guard from his federal civilian technician position due to his medical disqualification from further aviation service.

Leistiko responded to the termination notice by seeking outside review of his termination through a number of avenues, both administrative and judicial. Ultimately, he filed the amended complaint in this Court that is the subject of Defendants' motion for summary judgment. For his first cause of action, Plaintiff complains that Defendants denied him due process by terminating him without notice or a hearing. For his second cause of action, Plaintiff alleges that Defendants discriminated against him on the basis of disability, and failed reasonably to accommodate him. For his third cause of action, Plaintiff alleges violations of the Veterans Reemployment Rights Act.

Defendants have moved for summary judgment on all counts. They claim that the Court lacks subject matter jurisdiction over Plaintiff's claims. Defendants argue further that, even if the Court has jurisdiction to decide Plaintiff's claims, Plaintiff cannot prevail on the merits.

### II. SUMMARY JUDGMENT STANDARD

█ As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. PLAINTIFF'S DUE PROCESS CLAIM

*A. Jurisdictional Basis for Plaintiff's Claim*

■ The Defendants have asserted that there is no basis on which this Court can exercise jurisdiction over Plaintiff's due process claim. In order to establish that this Court has jurisdiction over Plaintiff's claim against the federal government, Plaintiff must demonstrate two things: that a statutory grant of jurisdiction exists, and that the government has expressly and unequivocally waived its sovereign immunity with regard to the type of claim Plaintiff wishes to raise. Since Plaintiff alleges violations of federal law in his first cause of action, 28 U.S.C. § 1331 provides the Court a statutory grant of jurisdiction. However, Plaintiff must also look beyond the jurisdictional statute for a separate waiver of sovereign immunity that allows him to bring his claim. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980). "The United

States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). All waivers are construed strictly in favor of the sovereign. *See McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951).

Plaintiff has cited the Court to a number of sources for his claimed waiver of the government's sovereign immunity. The Court addresses each of these statutes in turn.

1. Administrative Procedure Act

■ First, Plaintiff claims that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.,* waives sovereign immunity for his claim. The APA does contain a limited waiver of sovereign immunity. It provides that "[a]n action in a court of the United States seeking relief other than money damages ... shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702. This provision of the APA does not, however, waive sovereign immunity as to claims like those brought by Plaintiff.

First, the APA, by its own definition, does not apply where another statute precludes judicial review. 5 U.S.C. § 701(a)(1). Defendants have raised the Civil Service Reform Act ("CSRA"), Publ.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), as such a bar. Defendants claim that the CSRA provides the exclusive avenue of relief in personnel matters covered by the Act and the federal government otherwise has not waived its sovereign immunity.

The Supreme Court addressed the issue of whether the CSRA was intended to provide the exclusive remedy for federal employees faced with adverse personnel actions in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Fausto was a Department of the Interior employee who, like Plaintiff Leistiko, was in the excepted service. Fausto was suspended from his job for misconduct. After exhausting the agency appeal process without success, Fausto

brought suit in the Claims Court under the Back Pay Act for backpay for the period covered by the suspension. The Supreme Court held that a member of the excepted service may not obtain judicial review of an adverse personnel action for which the CSRA does not provide him a right of review. Justice Scalia began his analysis by explaining that:

the CSRA comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against federal employees. It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review. No provision of the CSRA gives nonpreference members of the excepted service the right to administrative or judicial review of suspension for misconduct. The question we face is whether that withholding of remedy was meant to preclude judicial review for those employees, or rather merely to leave them free to pursue the remedies that had been available before enactment of the CSRA.

*Fausto,* 484 U.S. at 443–44, 108 S.Ct. at 671–72. He found that a leading purpose of the CSRA was to replace the haphazard patchwork system of administrative and judicial review that had built up with an integrated scheme designed to balance the legitimate interests of federal employees with the needs of efficient administration. *Id.,* 484 U.S. at 444–45, 108 S.Ct. at 672. With regard to actions based on employee misconduct, it was:

evident that the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by [the Chapter governing adverse action taken against employees for the "efficiency of the service"].

*Id.,* 484 U.S. at 448–49, 108 S.Ct. at 674. A further indicator of nonreviewability was the structure of the statutory scheme: specifically, the preferred position of competitive

service employees; and the preference for administrative resolution of disputes over adverse personnel action. The Supreme Court held, therefore, that the CSRA established a comprehensive, and exclusive, system for reviewing personnel actions taken against federal employees.

■ The Court of Appeals for the Federal Circuit, which has exclusive jurisdiction over appeals of determinations under CSRA, *see* 28 U.S.C. § 1295(a)(10) & 5 U.S.C. § 7513(d), has held that "[t]he CSRA exclusively governs federal personnel matters. Thus, the CSRA specifies the only avenues for relief in personnel matters covered by the Act." *Booth v. United States,* 990 F.2d 617, 619 (Fed.Cir.1993) (citations omitted).

Plaintiff has attempted to distinguish *Fausto* and *Booth* from his case by pointing out that *Fausto* and *Booth* involved adverse employee actions taken on grounds of misconduct, and the adverse action in Plaintiff's case was taken because of his health status. Although the *Fausto* Court did not expressly hold that the CSRA precluded judicial review of a "for cause" dismissal based on grounds other than misconduct, the legal principles outlined by the Supreme Court compel the same result in this case. First, for the Court to allow review in this context would add a new piece to the "patchwork" of judicial and administrative review the CSRA was intended to replace. Second, the absence of provision for judicial review of a "for cause" dismissal based on grounds other than misconduct is no more an accident than is judicial review of a "for cause" dismissal based on misconduct. It manifests congressional intent to deny employees in Plaintiff's position review of such action in the District Court. Third, interpreting the exclusion of persons in Plaintiff's position from the CSRA as leaving them free to pursue other avenues of review would turn the preference system upside down by granting exempted service personnel remedies not available to competitive service personnel. Finally, allowing Plaintiff's suit would seriously undermine the preference for administrative resolution of disputes over adverse personnel action. The fact that the National Guard's internal grievance procedure was not applicable to Plain-

tiff's case does not change this result; the National Guard Technicians Act specifically states that Plaintiff's proper appeal is to the adjutant general of the jurisdiction concerned—an administrative remedy. Leistiko's case is governed by the rule of *Fausto* and *Booth* that the CSRA precludes all remedies not expressly granted in that Act.

Second, even if CSRA did not preclude judicial review, thereby taking the National Guard Technician Act out of the APA's coverage, the language of the National Guard Technician Act itself does. It expressly provides that "a right of appeal which may exist with respect to [separation from employment] shall not extend beyond the adjutant general of the jurisdiction concerned." 32 U.S.C. § 709(e)(5). The language of this section could hardly be clearer: it expressly disallows judicial review of covered personnel decisions, including separation from employment for cause.

Third, the APA applies only to actions "seeking relief *other than money damages*." 5 U.S.C. § 702 (emphasis added). Plaintiff has argued that his suit is not for "damages", but for "equitable restitution." Plaintiff's argument is unconvincing. The monetary compensation sought by Plaintiff is not restitution for private property taken by the government "for public use without just compensation." This case is at bottom an action for wrongful termination. The "restitution" Plaintiff claims is lost wages and benefits. In other words, Plaintiff seeks money damages. In sum, Plaintiff cannot successfully raise the APA as a waiver of the government's sovereign immunity in his case.

2. Constitution and Takings Clause of the Fifth Amendment

Next, Plaintiff claims that the Court's jurisdiction over his claim is based on the "takings" clause of the Fifth Amendment. He argues that he has a property right in continued federal employment, subject to the protection of the Due Process Clause, and a right to just compensation if his property right is interfered with.

Plaintiff first cites *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), for the proposition that the United States has waived its sovereign immunity with regard to all claims brought under the Constitution. In fact, the Supreme Court held exactly the opposite in *Testan*. The Court there stated:

[The respondents and *amici* ] first argue that the Tucker Act fundamentally waives sovereign immunity with respect to any claim invoking a constitutional provision or a federal statute or regulation, and makes available any and all generally accepted and important forms of redress, including money damages. . . .

The argument does not persuade us. . . . [T]he Tucker Act is merely jurisdictional, and grant of a right of action must be made with specificity. . . . In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and we regard as unsound the argument of *amici* that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation.

424 U.S. at 400–01, 96 S.Ct. at 954.[1]

 Nor can Plaintiff bring a *Bivens* action in this context. The Supreme Court held in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), that victims of a constitutional violation committed by a federal agent may recover damages against a federal official despite the absence of a statute conferring the right

---

1. The Supreme Court's second holding in *Testan*, although not cited by the parties, is also worthy of note here:

The respondents and the amici next argue that the violation of any statute or regulation relating to federal employment automatically creates a cause of action against the United States for money damages because, if this were not so, the employee would then have a right without a remedy, inasmuch as he is denied access to the one forum where he may seek redress.

Here again we are not persuaded. Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages.

424 U.S. at 401–02, 96 S.Ct. at 954–55.

to recover damages. However, a *Bivens* cause of action will not be implied if the defendant shows either "special factors counselling hesitation in the absence of affirmative action by Congress," *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2005, or that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the constitution and viewed as equally effective. *Id.,* 403 U.S. at 397, 91 S.Ct. at 2005. Both of the above disqualifying factors are present in this case.

Because of the "special factors" prong, a *Bivens* action cannot be brought in a military context. The Supreme Court has held that the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide a *Bivens* remedy for injuries that arise out of or are in the course of activity incident to service. *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *United States v. Stanley,* 483 U.S. 669, 680–81, 684, 107 S.Ct. 3054, 3061–62, 3064, 97 L.Ed.2d 550 (1987).

Every court having occasion closely to consider the capacity of National Guard technicians has determined that capacity to be irreducibly military in nature. *See, e.g., Wright v. Park,* 5 F.3d 586, 588 (1st Cir. 1993); *Stauber v. Cline,* 837 F.2d 395, 399 (9th Cir.), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); *Illinois Nat'l Guard v. FLRA,* 854 F.2d 1396, 1398 (D.C.Cir.1988); *American Fed'n of Gov't Employees v. FLRA,* 730 F.2d 1534, 1545–46 (D.C.Cir.1984); *New Jersey Air Nat'l Guard v. FLRA,* 677 F.2d 276, 279 (3d Cir.), *cert. denied,* 459 U.S. 988, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982); *NeSmith v. Fulton,* 615 F.2d 196, 200–01 (5th Cir.1980). Since National Guard technicians' positions are encompassed within a military organization and require the performance of work directly related to national defense, Plaintiff's employment was an activity incident to service, and, as such, cannot be the subject of a *Bivens*–type action.

Because of the "alternative remedy" prong, a *Bivens* action also cannot be brought in a federal employment context.

The Supreme Court has held that it is inappropriate to supplement the regulatory scheme with new judicial remedies when a federal employee asserts a work-related claim that is governed by comprehensive provisions which afford the employee meaningful remedies against the United States. *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983). Courts following this directive have consistently refused to create *Bivens* remedies in the field of federal employment, even if the CSRA has provided no remedy at all. *Jones v. Tennessee Valley Auth.,* 948 F.2d 258, 264 (6th Cir.1991); *see also Lombardi v. Small Business Admin.,* 889 F.2d 959, 961 (10th Cir.1989); *Moreno v. Small Business Admin.,* 877 F.2d 715, 716 (8th Cir.1989)."

Plaintiff cannot, therefore, bring an action for damages against the United States based solely on his contention that his claim arises out of a Constitutional violation.

▮▮▮▮ Plaintiff has also attempted to bring his claim under the Just Compensation Clause, by asserting that he is seeking "equitable restitution" in the form of lost wages, benefits, and attorney fees. The Just Compensation Clause, with its self-executing language, waives sovereign immunity because it can fairly be interpreted as mandating compensation by the government for the damage sustained. As described above, however, Plaintiff seeks a remedy of damages, not restitution. Plaintiff's attempt to circumvent the Just Compensation Clause's restricted application to "private property ... taken for public use" by attaching a "restitution" label to his claim is unavailing. Because Plaintiff has not raised a colorable claim that the government has exacted any property from him for a public use, he cannot use the Just Compensation Clause as a means of access to the Federal Courts.

### 3. Procedural Due Process

▮▮▮▮ Plaintiff asserts that this Court has jurisdiction over his claim under the Due Process Clause. He alleges that he was denied the process due him when the National Guard terminated him from his position because he was dismissed without adequate

notice or hearing. In determining whether it has jurisdiction to review Plaintiff's due process claim, the Court begins by asking whether there is a liberty or property interest that has been interfered with by the state, so as to bring the Due Process Clause into play. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). If the Court determines that there is a deprivation of "property" subject to the strictures of the Due Process Clause, it proceeds to the second step of the inquiry: whether the procedures attendant upon that deprivation were constitutionally sufficient. *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). The Constitution "does not create the right alleged to have been violated, but only affords procedural due process to protect rights that arise from other sources." *Mertik v. Blalock*, 983 F.2d 1353, 1360 (6th Cir.1993).

The Court must ask, then, whether Plaintiff has such a property right. Plaintiff alleges that the National Guard Technicians Act creates a property right in continued employment that is subject to the requirements of the Due Process Clause.

In *Tennessee v. Dunlap*, 426 U.S. 312, 316, 96 S.Ct. 2099, 2101, 48 L.Ed.2d 660 (1976), the Supreme Court stated in *dicta* that the Act created a property interest in continued employment for the guardsman's term of enlistment. In *NeSmith v. Fulton*, 615 F.2d 196 (5th Cir.1980), the Fifth Circuit addressed the issue of whether a tenured National Guard technician has a property interest in continued employment that was subject to Due Process protection.[2] It held that an order of discharge of a civilian National Guard technician was not reviewable because the plaintiff's constitutional due process challenge was not substantial. The court found that the plaintiff alleged a property interest in continued employment suffi-

cient to raise a claim under 42 U.S.C. § 1983. *Id.* at 200. Despite the existence of a property interest, however, the court refused to consider NeSmith's claim. It found that:

> consideration of the nature and strength of NeSmith's due process claim weighs against judicial review.... [W]hile courts have granted review when the constitutional challenge was founded on infringement of specific constitutional rights, such as the Fifth Amendment privilege against self-incrimination or the First Amendment freedoms of speech and press, they have denied review when the constitutional claim was that a serviceman's due process rights were violated by arbitrary and capricious official action. Thus, NeSmith's due process claim with respect to his civilian technician dismissal is not the sort of allegation of constitutional deprivation that generally supports judicial review of internal military matters.

*Id.* at 201–02.

On similar reasoning, the Ninth Circuit has held that a National Guard technician cannot bring a Title VII claim on a personnel action integrally related to the military's unique structure. *Mier v. Owens*, 57 F.3d 747 (9th Cir.1995), cert. denied — U.S. ——, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996). It held that "[g]uard technicians' challenges to discharge by the Guard and termination from technician employment are nonjusticiable because judicial review would seriously impede the military in performance of its vital duties." *Id.* at 750 (citation omitted).

■ This Court finds the reasoning of the Fifth and Ninth Circuits persuasive. Accordingly, it declines to exercise jurisdiction under the Due Process Clause in this case.

---

**2.** The parties have also cited two cases holding that *probationary* National Guard employees do not have a property right in continued employment during the period of their probation. *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *DiLuigi v. Kafkalas*, 584 F.2d 22 (3d Cir.1978), *cert. denied* 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979). These cases are distinguishable from Leistiko's, because the property right giving rise to due process protection arises out of the employment contract, and Fausto's and DiLuigi's contracts did not give them such a right. "We do not overlook the fact that since plaintiff received written notice that his appointment was on a trial basis, he had no real expectancy of tenure before entering permanent employment." *DiLuigi*, 584 F.2d at 26.

### 4. The Back Pay Act

█ Finally, Plaintiff alleges jurisdiction based on the Back Pay Act, 5 U.S.C. § 5596. The Back Pay Act grants federal employees the right to receive back pay when they "have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of" their pay and/or benefits. 5 U.S.C. § 5596(b)(1). The statute thus waives the government's sovereign immunity that would otherwise preclude an award of back pay in the event of wrongful termination from government employment. *Lee v. Brady,* 741 F.Supp. 990, 991 (D.D.C.1990).

█ The Back Pay Act does not, however, provide Plaintiff with a means of bringing suit where a cause of action for wrongful termination would not otherwise exist. It exists in tandem with CSRA. The substantive right to review of an adverse personnel action is provided by CSRA; the Back Pay Act permits money damages if the complainant bringing suit under CSRA prevails. *See Testan,* 424 U.S. at 406, 96 S.Ct. at 957. The Back Pay Act applies only when a court has jurisdiction to entertain the plaintiff's suit under CSRA or some other statute. The Court has already held, *supra,* that Plaintiff cannot use CSRA as a basis for the Court's jurisdiction in this case. Neither can he use the Back Pay Act as a basis for such jurisdiction.

In sum, Plaintiff has failed to show that a statutory or constitutional basis exists upon which this Court may exercise jurisdiction over his procedural due process claim. This Court cannot review the allegations Plaintiff raises in Count I of his complaint.

### B. Merits of Plaintiff's Due Process Claim

Furthermore, Plaintiff has made no showing that the result in his case would be different even if this Court were to exercise jurisdiction. It appears that Plaintiff in fact received all the process to which he was due. The gravamen of Plaintiff's due process complaint is that he was denied access to the administrative appeal process because his "for cause" termination was on grounds other than misconduct. This Court's review of literature concerning the administrative appeal afforded in terminations for misconduct indicates that a major purpose of such appeal is to allow the terminated employee an opportunity to rebut erroneous factual allegations made against him or her, and to ensure that agency action is taken on the basis of correct information. In Leistiko's case, there is no factual dispute. Leistiko admits that he suffered a neurological incident. He admits that he has a cardiac arrhythmia. An administrative appeal would not have uncovered any dispositive facts in Plaintiff's favor.

Count I of Plaintiff's Amended Complaint is, therefore, dismissed.

## IV. PLAINTIFF'S CLAIM UNDER THE REHABILITATION ACT

### A. Jurisdictional Basis for Plaintiff's Claim

█ Plaintiff claims that the Court has jurisdiction to hear his disability discrimination claim brought under the Rehabilitation Act because that Act expressly creates a private right of action for employees of federal agencies, including the Department of the Army. *See* 29 U.S.C. § 794a(a)(1), 42 U.S.C. § 2000e–16(a). It is true that the Rehabilitation Act applies to the Department of the Army. However, every Court of Appeals that has construed this section in a military context has held that it creates a right of action only in *civilian,* not military, employees of the armed forces. *See, e.g., Doe v. Garrett,* 903 F.2d 1455, 1461 (11th Cir.1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991); *Roper v. Department of the Army,* 832 F.2d 247, 248 (2d Cir.1987); *Gonzalez v. Department of the Army,* 718 F.2d 926, 927–29 (9th Cir.1983); *Johnson v. Alexander,* 572 F.2d 1219, 1223–24 (8th Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978); *see also Collins v. Secretary of the Navy,* 814 F.Supp. 130, 131 (D.D.C.1993); *Becker v. Rice,* 827 F.Supp. 589 (W.D.Ark.1993). Plaintiff was employed in a hybrid military/civilian position. As discussed above, however, the capacity of a National Guard technician is *irreducibly military in nature,* and the same considerations that mandate the Court's refusal of jurisdiction over Plaintiff's due process claim likewise mandate that this Court decline jurisdiction over Plaintiff's disability discrimination claim.

Plaintiff's second Cause of Action must be dismissed.

### B. Merits of Plaintiff's Claim

The Court's determination that it does not have jurisdiction to consider Plaintiff's second Cause of Action is not necessary to its determination that Plaintiff cannot prevail on his disability discrimination claim. In order to come within the protection of the Rehabilitation Act, Plaintiff must be an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a). An individual with a disability is "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(7)(B). Major life activities are "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1613.702(c).

■■■ On the undisputed facts before the Court, Plaintiff is not disabled. Plaintiff's physical impairment, while real, does not substantially limit any of his major life activities. Plaintiff does not allege that his impairment in any way limits his ability to care for himself, perform manual tasks, walk, see, hear, speak, breathe, learn, or work. The contrary is true: Leistiko admits that he is able both to work and to engage in a variety of athletic activities. The only limitation Leistiko alleges is an inability to maintain flight status. An impairment that affects only a narrow range of activities does not qualify as a handicap under the Rehabilitation Act. *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 n. 3 (6th Cir.1985). Because Plaintiff is not disabled, he cannot raise a claim under the Rehabilitation Act.

Count II of Plaintiff's Amended Complaint is, therefore, dismissed.

### V. PLAINTIFF'S CLAIM UNDER THE VETERAN'S REEMPLOYMENT RIGHTS ACT

■■■ Finally, Plaintiff claims that Defendants violated the Veteran's Reemploy-

Rights Act ("VRRA")[3] because they terminated his civilian job as a result of a physical impairment incurred while he was on active military duty. The present version of this statute provides that "[a] person who is a member of ... a uniformed service shall not be denied ... retention in employment ... on the basis of that membership." 38 U.S.C. § 4311(a). The purpose of VRRA is to protect reservists against discrimination in their civilian employment motivated by their reserve status or participation in the National Guard or Reserves. 38 U.S.C. § 4301(a); *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559, 101 S.Ct. 2510, 2516, 69 L.Ed.2d 226 (1981).

■■■ The VRRA is utterly inapposite to the facts underlying Plaintiff's claim. Plaintiff makes no allegation that Defendants discriminated against him because of his National Guard status; indeed, National Guard membership is a requirement of Plaintiff's position. Plaintiff makes no allegation that he was terminated from his employment on the basis of his membership in the National Guard; he was terminated because he does not meet the physical requirements to maintain flight status. Whether the physical impairment that caused Plaintiff's disqualification from flight status developed while Plaintiff was on or off active military duty is irrelevant to a claim under the VRRA.

■■■ Plaintiff does not allege that he was terminated because of his membership and participation in the National Guard; therefore, he cannot bring a claim under VRRA. Count III of Plaintiff's Amended Complaint is dismissed.

### VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and/or for Summary Judgment is granted in its entirety.

IT IS SO ORDERED.

---

**3.** The VRRA was consolidated into the Uniformed Services Employment and Reemploy-

ment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301 *et seq.*, effective October 13, 1994.